UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
ANTHONY POWELL,

        *Plaintiff*,

      v.

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

        *Defendant*.
---------------------------------X

<u>**MEMORANDUM AND ORDER**</u>

19-cv-2983 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

      Anthony Powell ("Plaintiff" or "Claimant") appeals the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), which found that Claimant was not eligible for disability insurance benefits under the Social Security Act ("the Act") because Claimant was not disabled within the meaning of sections 216(i) and 223(d) of the Act. Plaintiff argues that the Commissioner's decision should be vacated and the matter remanded because the decision was not supported by substantial evidence and does not properly apply the relevant legal standards.

      Presently before the court are the Plaintiff's motion for judgment on the pleadings (ECF No. 12, Motion for Judgment On the Pleadings ("Pl. Mem.")) and the Defendant's cross-motion for judgment on the pleadings (ECF No. 14, Cross-Motion for

1

Judgment on the Pleadings ("Def. Mem.").)  For the reasons

stated below, Plaintiff's motion is GRANTED, defendant's motion

is DENIED, and the case is remanded for further proceedings

consistent with this Memorandum and Order.

## Background

### I.   Procedural History

On January 25, 2016, Plaintiff filed an application

for disability benefits, alleging disability beginning January

10, 2014.  (ECF No. 15, Administrative Transcript ("Tr.") 204-

05, 258.)  Plaintiff alleged disability due to diabetes, sleep

apnea, arthritis, angioedema, gout, high blood pressure,

vertigo, kidney issues, posttraumatic stress disorder (PTSD),

and depression.  (*Id.*)  After Plaintiff's claim was first denied

on August 17, 2016 and denied again on reconsideration,

Plaintiff filed a written request for a hearing on September 13,

2016.  (*See* Tr. 128-30, 132-37, 138-39.)

On March 23, 2018, Plaintiff appeared for a hearing

with his attorney, Charles Weiser, and testified before

Administrative Law Judge ("ALJ") Mark Solomon in New York, New

York.  (*See* Tr. 69.)  Melissa J. Fass-Karlin also testified as

an impartial vocational expert.  (Tr. 72.)  During the hearing,

the ALJ reviewed: (1) whether the claimant was disabled under

sections 216(i) and 223(d) of the Act and (2) whether the

claimant met the insured status requirements of section 216(i)

2

and 223 of the Act.  (Tr. 69-99.)  In a written decision dated
May 24, 2018, the ALJ found that Plaintiff was not disabled
within the meaning of the Act and therefore was not entitled to
disability benefits.  (*See* Tr. 12-25.)  The Appeals Council
denied Plaintiff's request for review on March 29, 2019 and the
ALJ's decision became the final decision of the Commissioner.
(Tr. 1-3.)  This appeal followed.

## II.  Factual Background

The background of this action is set forth in the
parties' joint stipulation of relevant facts and the
administrative record, which are incorporated herein.  (*See* ECF
No. 14-1, Joint Stipulation of Relevant Facts ("Stip."); ECF No.
15.)  Having reviewed the parties' joint stipulation of facts,
the ALJ's decision, and relevant evidence in the administrative
record, the court notes the following evidence:

### A. Plaintiff's Testimony at the Administrative Hearing

Plaintiff was born on August 23, 1961.  (Tr. 111.)
Plaintiff testified that he lived with his sister, niece, and
nephew and spent his days "pretty much sedentary" between
reading, watching television, and going from sitting to laying
down propped up.  (Stip. 11-12; Tr. 73.)  In his daily life,
Plaintiff stated that although he could help with laundry, he
had difficulties conducting activities like personal care and
going to the store due to pain in his back and legs, difficulty

3

standing, and light-headedness.  (Stip. 11; Tr. 73-74.)
Plaintiff also stated that although he could not travel more
than four blocks due to leg and lower back pain, he could take
the subway if it was "right outside" his home.  (Stip. 11-12;
Tr. 75.)

Plaintiff also used a cane, which was prescribed to
help with his chronic back pain and severe arthritis.  (Tr. 76.)
Plaintiff reported that he used his cane constantly for walking
both indoors and outdoors.  (*Id.*)  Plaintiff noted, however,
that he occasionally uses crutches instead of his cane when he
suffers gout flare-ups that affect his ankles, knees, and hands
and cause intense swelling in his legs.  (Tr. 78)  These gout
attacks last one to two weeks and occur every two to three
months.  (*Id.*)  Plaintiff also stated that he could sit for
about 20 minutes without "stiffening up" and that standing
without his cane for 15-20 minutes would result in pain for
days.  (Tr. 79-81.)  Plaintiff also shared that he had
difficulty using his hands and fingers due to neuropathy three
to four times a week and can only lift and carry about 5 to 10
pounds.  (*Id.*)

### B. Plaintiff's Medical History

On April 25, 2014, Plaintiff was diagnosed with
diabetic ketoacidosis secondary to uncontrolled diabetes after
being admitted at St. Lucie Medical Center due to symptoms

including general malaise, abdominal pain, nausea, vomiting, and shortness of breath.  (Stip. 1; Tr. 340, 333-83, 776-863.) Plaintiff has a past medical history of type 2 diabetes, dyslipidemia, obstructive sleep apnea, gout, hypertension, and glucose-6-phosphate dehydrogenase deficiency.  (Stip. 1; Tr. 337.)  Plaintiff was examined and found to have normal extremity, back, neurological, and psychiatric results.  (Stip. 1-2.)  After treatment, Plaintiff was discharged on May 1, 2014 in stable condition.  (*Id.* at 2.)

Later that day on May 1, 2014, Plaintiff requested a filling of his prescriptions, a glucometer, and test strips from the Department of Veterans Affairs ("VA") emergency department. (Stip. 2.)  During this visit, Plaintiff reported feeling well and had no other complaints.  (*Id.*)  On May 2, 2014, Plaintiff returned to the emergency department to request an additional glucometer and allopurinol.  (*Id.*)  Plaintiff similarly denied symptoms on this day and received unremarkable physical examination results.  (*Id.*)

On May 8, 2014, Plaintiff reported to his primary care physician David B. Youel, M.D. at the VA, with concerns about losing weight.  (*Id.*; Tr. 514-21.)  Although Dr. Youel advised Plaintiff to gradually increase exercise to 30 sustained minutes six to seven days a week, Dr. Youel also recommended against lifting items over 10 pounds as this slowed blood flow.  (Stip.

5

2; Tr. 515.)   Plaintiff also reported chronic back pain at a
level 3 out of 10.  (Stip. 2-3.)  On examination, Plaintiff was
not in acute distress and had normal neurological and back
findings.  (*Id.* at 3; Tr. 516-17.)  Dr. Youel diagnosed
plaintiff with diabetes mellitus type 2, hypercholesterolemia,
hypertension, obesity with sleep apnea, and gout.  (Tr. 517-18.)

On May 14, 2014, Plaintiff was provided a cane at Dr.
Youel's request.  (Stip. 3; Tr. 496-99.)  On May 23, 2014,
during an appointment with a vocational rehabilitation
specialist, Plaintiff expressed interest in full-time or part-
time employment.  (Tr. 494-95.)  The specialist provided
Plaintiff a number of referrals, including a referral to the
Social Security Administration and two community referrals for
his job search.  (*Id.*)  On August 6, 2014, Plaintiff saw a VA
social worker, reporting difficulties with affording his rent
and expenses and reporting being unemployed since having medical
issues in January 2014.  (*Id.*)

On April 15, 2015, Plaintiff returned to Dr. Youel for
a routine follow-up on labs and medications.  (Stip. 4.)
Plaintiff noted 7 out of 10 back pain and angioedema after
taking Ibuprofen.  (*Id.*; Tr. 469.)  Dr. Youel noted that
Plaintiff's gait and mobility were normal for his age and
assessed that Plaintiff's back pain was attributable to
degenerative joint disease.  (Stip. 4; Tr. 472.)

On January 15, 2016, Plaintiff returned to the VA emergency room due to shoulder pain, dizziness, blurred vision, and elevated blood pressure. (Stip. 5; Tr. 434-45.) Plaintiff was noted to be independent in his activities of daily living and was found to have no acute distress, back tenderness, or focal neurological deficits. (Tr. 438, 440.) In a follow-up appointment with Dr. Youel on February 5, 2016, Plaintiff reported his pain level was zero and requested help with filling out a social security disability form. (Tr. 414-33.) Dr. Youel noted that Plaintiff had an overall 70% service connected disability, due to sleep apnea syndrome, gout, diabetes, mellitus, tinnitus, and traumatic arthritis. (Tr. 425.)

### C. Medical Opinion from David B. Youel, M.D.

On February 23, 2016, Dr. Youel completed a medical source statement form reporting that Plaintiff had degenerative disc disease in the lumbar spine, knees, feet, right shoulder, and chronic right shoulder acromioclavicular separation. (Stip. 6; Tr. 544-49.) Dr. Youel also checked form prompts detailing that Plaintiff was limited to: (1) working fewer than four hours in an eight-hour workday, (2) lifting up to 20 pounds occasionally, and (3) standing, walking, or sitting fewer than two hours total and 30 minutes to an hour at a time, with a cane needed for ambulation and to change positions from sitting and standing after an hour. (Tr. 544.)

7

In addition, Dr. Youel checked form prompts that
Plaintiff: (1) could never perform any postural activities
except occasionally stoop, (2) could never use his arms or hands
for typing or twisting, and could use his hands frequently for
all other tasks, (3) was limited in visual acuity, speech, and
hearing, and unlimited in depth perception, (4) should avoid
moving machinery, fumes, noise, heights, humidity, and
vibration, (5) would have unplanned absences more than four
times per month; and (6) would need unscheduled 10 to 15 minute
breaks every 30 minutes.  (Tr. 545.)  Dr. Youel also reported
that Plaintiff had sensitivity to light, significant fatigue,
general weakness, intense and chronic pain, and vertigo, and had
symptoms that would constantly interfere with attention and
concentration.  (Tr. 546.)  Dr. Youel indicated that the
previously specified limitations had applied since 1980.  (*Id.*)
In sum, Dr. Youel opined that Claimant has a well below
sedentary residual functional capacity. (*See* Stip*.* 7; Tr. 23.)

### D. Medical Opinion from Raymond H. Wolff, D.C.

On April 7, 2016, Plaintiff attended a chiropractic
consultation with Raymond H. Wolff, D.C.  (Stip. 8; Tr. 577-80.)
Plaintiff complained of a 1-year history of neck pain and 35-
year history of back pain that was exacerbated by yardwork,
lifting weight, and certain exercises.  (Tr. 577.)  Plaintiff
also reported difficulty with housework, yardwork, and standing

8

long periods.  (*Id.*)  Upon examination, Dr. Wolff found that
Plaintiff was not in acute distress and had a range of motion
limitations in the cervical and lumbar spine, as well as
cervical tenderness and slight lumbar tenderness, but otherwise
had negative findings including negative straight leg raising,
intact sensation, and full strength.  (Tr. 579.)  Thus, Dr.
Wolff recommended weekly spinal manipulative therapy sessions
for six weeks.  (*Id.*)

### E. Medical Opinion from Jerry Jacobson, M.D.

On August 4, 2016, Plaintiff had a consultative
examination with Jerry Jacobson, M.D.  (Stip. 8; Tr. 669-76.)
Plaintiff reported a history of chronic pain in his back, neck,
shoulders, hands, knees, ankles, and feet, as well as a history
of diabetes, angioedema, glucose-6-phosphate dehydrogenase
deficiency, vertigo, and gout.  (Tr. 670.)  Dr. Jacobson
observed that Plaintiff was "in obvious pain as he moved
throughout the exam."  (Tr. 671.)  Upon examination of
Plaintiff's back and spine, Dr. Jacobson found that Plaintiff
had point tenderness of the lumbar spine, tenderness and spasm
of the paravertebral musculature, and moderate pain at 20
degrees during straight leg raising.  (Tr. 672.)  Upon
examination of Plaintiff's upper extremities, Dr. Jacobson found
that Plaintiff had pain and decreased range of motion in the
right shoulder, moderate swelling of the right wrist and thumb

9

suggesting an acute gout attack, point tenderness in the right shoulder and wrist, and 3/5 grip strength on the right with hindered opposition and fine manipulation in the right hand and difficulty manipulating buttons. (*Id.*)  As to plaintiff's lower extremities, Dr. Jacobson found that Plaintiff had moderate pain during range of motion of the hips, "difficulty ambulating in normal heel to toe fashion," and unsteady ambulation without assistance due to pain.  (Tr. 672, 676.)  In terms of his neurology, Dr. Jacobson found that Plaintiff had normal reflexes, sensation, and strength in the upper and lower extremities.  (Tr. 672.)  In addition, Dr. Jacobson found that Plaintiff showed a normal range of motion, except as to his right shoulder.  (Tr. 674-75.)  Consequently, Dr. Jacobson opined that Plaintiff suffered from "moderate to severe chronic pain," likely had difficulty performing most activities of daily living, would have a difficult time finding employment, and "would be expected to do minimal sedentary activity at best."  (*See* Tr. 673; Stip. 9.)

**F. Medical Opinion from Robert Steele, M.D.**

On August 17, 2016, State agency medical consultant Robert Steele, M.D., reviewed the evidence in Plaintiff's file and assessed that Plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; push and pull commensurate with these weight limitations; stand or walk about

six hours in an eight-hour workday; and sit for about six hours
in an eight-hour workday.  (Stip. 9-10; Tr. 118.)  Dr. Steele
also noted that Plaintiff could frequently perform postural
activities except for occasional climbing of ladders, ropes, and
scaffolds.  (Stip. 10; Tr. 118-19.)  Moreover, other than being
limited to using the right hand frequently for handling or
fingering, Plaintiff otherwise had no manipulative limitations.
(Tr. 119.)  Finally, Dr. Steele noted that Plaintiff had no
specific symptoms from diabetes mellitus or high blood pressure
and that his degenerative joint or disc disease findings were
moderate in the cervical spine but otherwise mild.  (Tr. 118.)

### G. Medical Opinion from Beth Ehrenpreis, Ph.D.

On December 20, 2017, Beth Ehrenpreis, Ph.D. conducted
a psychiatric consultative examination on Plaintiff.  (Tr. 677-
684.)  Based on her examination, Dr. Ehrenpreis opined that
claimant had no psychiatric problems severe enough to interfere
with his daily functioning.  (*Id.*)

### H. Medical Opinion from Silvia Aguiar, M.D.

On December 20, 2017, Plaintiff attended a
consultative examination with Silvia Aguiar, M.D.  (Stip. 10;
Tr. 685-90.)  On examination, Dr. Aguiar assessed that
Plaintiff's cane was medically necessary because it improved his
mobility and partially corrected gait.  (Tr. 687.)  Moreover,
Dr. Aguiar found that Plaintiff had moderate limitations in

bending, heavy lifting, prolonged walking, prolonged standing, prolonged sitting, crouching, reaching overhead, pushing, and pulling.  (Tr. 687-89.)  Dr. Aguiar also found that Plaintiff had intact hand and finger dexterity, physiologic and equal reflexes, no sensory deficits, and full strength.  (Tr. 689.) Ultimately, Dr. Aguiar opined that claimant should avoid positional activities that require balance, operating heavy machinery, heights, and operating motor vehicles due to his history of sleep apnea and positional vertigo.  (*Id.*)  He should also avoid activities requiring right foot control.  (*Id.*)

### I. Medical Opinion from Maxine Ruddock, Ph.D.

The State agency psychological consultant, Maxine Ruddock, Ph.D., opined that Plaintiff had no medically determinable impairment following her review of the evidence. (Tr. 103-05.)

### Legal Standard

### I.    Standard of Review

A district court may set aside determination by an ALJ "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole."  *Greek v. Colvin*, 802 F.3d 370, 374-75 (2d Cir. 2015) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); 42 U.S.C. § 405(g)).  Inquiry into legal error "requires the court to ask whether 'the Claimant has had a full hearing under the

[Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Meanwhile, support by "substantial evidence" in the record requires "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *accord Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Rather, "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted).

Thus, "[i]f the reviewing court finds the substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Johnson v. Astrue*, 563 F.Supp.2d 444, 454 (S.D.N.Y. 2008) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the reviewing court finds there is substantial

13

evidence to support the Commissioner's determination, the court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

## II. The ALJ's Five-Step Evaluation for Determining Disability

To receive disability benefits, a Claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A Claimant meets this requirement when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw v. Chater,* 221 F.3d 126, 131-32 (2d Cir. 2000). The impairment must be of "such severity" that the Claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the Claimant's conditions meet the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is as follows:

14

> [I]f the Commissioner determines (1) that the
> Claimant is not working, (2) that [s]he has a
> 'severe impairment,' (3) that the impairment
> is not one [listed in Appendix 1 of the
> regulations] that conclusively requires a
> determination of disability, and (4) that the
> Claimant is not capable of continuing in [her]
> prior type of work, the Commissioner must find
> [her] disabled if (5) there is not another
> type of work the Claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhard*, 335
F.3d 99, 106 (2d Cir. 2003) (alterations in original)); *see also*
20 C.F.R. § 404.152(a)(4).  At any of the previously mentioned
steps, if the answer is "no," then the analysis stops and the
ALJ must find Claimant not disabled under the Act.

During this five-step process, the Commissioner must
consider whether "the combined effect of any such impairment
. . . would be of sufficient severity to establish eligibility
for Social Security benefits."  20 C.F.R. § 4040.1523.  Further,
if the Commissioner does not find a combination of impairments,
the combined impact of the impairments, including those that are
not severe (as defined by the regulations), will be considered
in the determination process.  20 C.F.R. § 416.945(a)(2).

At the first step, the Commissioner must determine
whether the claimant is engaged in substantial gainful activity.
20 C.F.R. § 404.1520(b).  If not, the Commissioner proceeds to
the second step to determine whether the claimant has a "severe
medically determinable physical or mental impairment."  *Id.* §

404.1520(a)(4)(ii). An impairment is considered severe if it "significantly limits [claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is severe, the ALJ proceeds to the third step, in which the Commissioner determines whether the impairment meets or equals one of the impairments listed in the Act's regulations. *Id.* § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Part 404, Subpart P, App'x 1. If the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. If the claimant does not have a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC") before continuing with steps four and five. *Puccio v. Colvin*, No. 15-cv-06941, 2017 WL 1232488, at *3 (E.D.N.Y. Mar. 31, 2017).

An individual's RFC is "the most [a claimant] can still do" in a work setting despite any physical and mental limitations caused by the claimant's impairments and any related symptoms. 20 C.F.R. § 404.1545(a)(1). At step four, the ALJ uses the RFC determination to determine if the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can still perform past relevant work, the claimant is not disabled. If the claimant established that the impairments prevent him from returning to his previous occupation, the ALJ proceeds to step five, where the Commissioner must determine

16

whether the claimant—given the claimant's RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If claimant can perform other work, the claimant is not disabled.

### III. The ALJ's Affirmative Duty to Develop the Record

Because benefits proceedings are non-adversarial in nature, "the ALJ, unlike a judge in trial, must [on behalf of all claimants] . . . affirmatively develop the record." *Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508-09 (2d Cir. 2009) (quoting *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1999)) (alterations in original).  This duty exists "even when . . . the claimant is represented by counsel." *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996).

Consequently, although substantial deference is afforded to the ALJ's determination, remand may be required if the ALJ fails to discharge his or her affirmative obligation to develop the record when making a disability determination. *See Butts v. Barnhart,* 388 F.3d 377, 386 (2d Cir. 2009) ("[I]n cases where the ALJ failed to develop the record sufficiently to make appropriate disability determinations, a remand for further findings [that] would so plainly help to assure the proper disposition of [the] claim . . . is particularly appropriate." (citation omitted)).

17

## IV.  The ALJ's Determination of Plaintiff's Disability

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the Social Security Act, the ALJ made the following determinations.  (*See* Tr. 17-25.)

At step one, the ALJ determined that the claimant had not engaged in substantial gainful activity since January 10, 2014, the alleged onset date.  (Tr. 17.)  Although the Plaintiff did some work after January 10, 2014, the ALJ found that this work activity did not rise to the level of substantial gainful activity.  (*Id.*)  At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus; sleep apnea; mild bilateral knee osteoarthritis; mild lumbar degenerative disc disease; right shoulder mild widening of acromioclavicular joint; hypertension; and obesity.  (*Id.* (citing 20 CFR § 404.1520(c)).)  The ALJ further found that these severe impairments significantly limited the plaintiff's ability to perform basic work activities as required by SSR 85-28.  (*Id.*)

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App'x 1 (20 CFR §§ 404.1520(11), 404.1525, 404.1526).  (Tr. 18.)  In making this determination,

18

the ALJ found that the record did "not establish the medical
signs, symptoms, laboratory findings or degree of functional
limitation required to meet or equal the criteria of any listed
impairment and that no acceptable medical source designated to
make equivalency findings has concluded that the claimant's
impairments medically equal a listed impairment." (*Id.*)

Because he did not find that Plaintiff had a listed
impairment, the ALJ then determined Plaintiff's RFC before
continuing to step four and five analysis. (*See id.*)  To this
end, the ALJ found that the Plaintiff retained the RFC to
perform light work as defined in 20 CFR § 404.1567(b): that is,
that Plaintiff can lift or carry 20 pounds occasionally and 10
pounds frequently; sit, stand, and walk 6 hours in an 8-hour
workday; work with occasional climbing, crouching, and no
balancing; and avoid unprotected heights and hazardous
machinery. (*Id.*)  In support of his RFC determination, the ALJ
considered the Plaintiff's symptoms, the extent to which his
symptoms can reasonably be accepted as consistent with the
objective medical evidence and other evidence based on the
requirements of 20 CFR § 404.1529 and SSR 16-3p, and opinion
evidence in accordance with the requirements of 20 CFR §
404.1527. (Tr. 18.)

Importantly, the ALJ found that the Plaintiff's
allegations are not substantially supported by treatment records

19

through 2016.  (Tr. 19.)  In particular, the ALJ noted that
Plaintiff had substantially normal findings, with only mild
limitations in back and cervical range of motion and no
reference to knee deficiency or hand problems in the treatment
notes.  (*Id.*)  The ALJ also emphasized the lack of hospital
records reflecting gout flare-ups and ketoacidosis since April
2014.  (*Id.*)  Moreover, the ALJ perceived a number of
inconsistencies in the plaintiff's medical history.  (Tr. 21.)
For instance, the ALJ reviewed Plaintiff's visit to the
chiropractor in April 2016 and highlighted that Plaintiff's
listed aggravating factors of "yardwork, lifting weight, and
certain exercises" indicate a level of activity "inconsistent
with and greater than" the limitations alleged by the plaintiff
in February 2016.  (*Id.*)

When reviewing medical opinions about the plaintiff's
condition, the ALJ afforded varying weight to each doctor's
assessment.  Significantly, the ALJ gave Dr. Youel, the
Plaintiff's treating physician, "little weight" in his opinion
that Plaintiff had a "well below sedentary residual functional
capacity."  (*Id.* at 23.)  In doing so, the ALJ underscored that
the Plaintiff's physical treatment records "[did] not support
such limitations on physical examination" and noted that the
VA's records have "minimal physical findings."  (*Id.* at 23.)
Similarly, the ALJ gave Dr. Jacobson and Dr. Aguiar's opinions

"little weight," finding that their assessments were based on one-time examinations and also did not align with prior treatment records. (*Id.* at 23-24.)

Meanwhile, the ALJ gave Dr. Steele "partial weight," acknowledging that, although Dr. Steele was not an examining or treating source, the ALJ found his opinion to be consistent with the findings and examinations in treatment notes. (*Id.* at 24.) The ALJ gave Dr. Ehrenpreis and Dr. Ruddock "great weight." (*Id.*) Although Dr. Ehrenpreis based her assessment on a one-time evaluation, the ALJ found her opinion to be "consistent with the evidence and other opinions." (*Id.*) In addition, despite Dr. Ruddock being neither a treating nor an examining source, the ALJ granted her great weight because he "concur[red]" with her findings. (*Id.*) In sum, based on the record as a whole, the ALJ found that the above RFC was appropriate and that Plaintiff had a "substantially greater ability to function" than alleged, and that even if Plaintiff was limited to sedentary work, he could perform his past work. (*Id.*)

Finally, the ALJ also found that Plaintiff is capable of performing past relevant work, and that this work does not require the performance of work-related activities precluded by the plaintiff's RFC. (Tr. 24.) In particular, the ALJ found that Plaintiff would be able to perform two of his previous

sedentary jobs as a Police Officer/Chief and as a Customer
Service Representative for medical supplies at a call center.
(*Id.* at 25.)  As such, the ALJ agreed with the vocational
expert's testimony that the Plaintiff's RFC would allow him to
perform both sedentary jobs as normal if limited to sedentary
work with some non-exertional limitations.  (*Id.*)  In
conclusion, the ALJ determined that the plaintiff was not
disabled as defined in the Act and therefore ineligible for
disability benefits.  (*Id.*)

## Discussion

Plaintiff argues that the ALJ's decision was not
supported by substantial evidence and did not properly apply the
relevant legal standards.  (*See* Pl. Mem. 9-13.)  Specifically,
the Plaintiff contends that the ALJ improperly weighed the
opinion of the medical physicians and failed to develop the
record.  Consequently, the Plaintiff asks that the ALJ's
decision be vacated and the matter remanded for further
proceedings.  (Pl. Mem. 13.)  The Commissioner argues that the
ALJ's decision not to give controlling weight to Plaintiff's
treating physician was supported by substantial evidence because
there was medical evidence in the record supporting the ALJ's
RFC determination.  (Def. Mem. 5-10.)  For the reasons set
forth below, the Court finds that the ALJ violated the treating

22

physician rule and remands the case for further proceedings consistent with this Memorandum and Order.

## I.    Weight of Medical Opinion Evidence

Under the Commissioner's regulations, every medical opinion in the administrative record must be evaluated, "[r]egardless of its source," when determining whether a claimant is disabled.  20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ must evaluate each source, considering factors such as a source's relationship with the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the medical source, and any other relevant factors that tend to support or contradict the medical opinion.  20 C.F.R. § 404.1527(c).  The ALJ must finally determine how much weight to assign each opinion based on these factors.  *Id.*

Treating physicians are given particular deference and controlling weight in assessing medical source opinions.[1] Although "a treating physician's statement that the claimant is disabled cannot itself be determinative," *Micheli v. Astrue*, 501

---

[1]    The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record.  *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule.  *See id.* § 404.1527(c)(2).  Plaintiff filed his claim on January 25, 2016.  Accordingly, the court applies the treating physician rule in the instant case.  *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

Fed. App'x 26, 28 (2d Cir. 2012) (summary order) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), a treating physician's opinion as to the "nature and severity" of a plaintiff's impairments will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2); *see Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015) (discussing the treating physician rule); *Petrie v. Astrue*, 412 Fed. App'x 401, 405 (2d Cir. 2011) (summary order) ("The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient." (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (per curiam))).

When a treating physician's opinion is not afforded controlling weight, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2) (requiring the Commissioner to "always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's medical opinion"). The Commissioner's regulations enumerate several

24

factors that may guide an ALJ's determination of what weight to give to a treating source's opinion: (1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors.  20 C.F.R. § 416.927(c)(2)-(6).  The ALJ is not required to cite each factor explicitly in the decision, but must ensure he applies the substance of the rule.  *Halloran*, 362 F.3d at 32.  Failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (summary order).

## II.  The ALJ Violated the Treating Physician Rule

In this case, the ALJ gave "little weight" to the medical opinion of Dr. Youel, one of plaintiff's treating physicians.  (Tr. 23.)  According to the ALJ, Dr. Youel opined that Plaintiff had a "well below sedentary" RFC due to Plaintiff's need for "a cane for ambulation" and the Plaintiff's requirement that he "alternate between sitting and standing." (*Id.*)  Nonetheless, the ALJ gave Dr. Youel's opinion "little weight as physical treatment records do not support such limitations on physical examination."  (*Id.*)  Furthermore, the ALJ concluded that Dr. Youel "treats at the VA; and their

records have minimal physical findings." (*Id.*) Having reviewed the administrative record and relevant medical evidence, this Court concludes that the ALJ's conclusory dismissal of Dr. Youel's opinion violated the treating physician rule.

As a threshold matter, Dr. Youel is undoubtedly Plaintiff's treating physician because Plaintiff has seen Dr. Youel as his primary care physician at the VA since May 8, 2014. (Stip. 2.)  During this meeting, Dr. Youel diagnosed the plaintiff with diabetes mellitus type 2, hypercholesterolemia, hypertension, obesity with sleep apnea, and gout. (*Id.*)  Over the years, Plaintiff continued to see Dr. Youel on April 15, 2015, February 5, 2016, February 23, 2016, and May 10, 2017. (*See generally* Stip. 4-11.)  During his visits, Dr. Youel continued to examine and monitor Plaintiff's health while providing routine follow-up on labs and medications. (*Id.*) Based on this multi-year history of care and the plaintiff's own assertion that Dr. Youel is his treating physician (*see* Pl. Mem. 10), the court agrees that Dr. Youel is a "treating source" as defined in 20 C.F.R. § 404.1527(c)(2).

Thus, because the ALJ did not give Dr. Youel's opinion controlling weight, the ALJ was required to "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33; *see also Snell*, 177 F.3d at 133; 20 C.F.R. § 416.927(c)(2) (requiring SSA to "always give

26

'good reasons' in [its] notice of determination or decision for the weight [given to a] treating source's medical opinion"). The ALJ's failure to "comprehensively" provide reasons for discounting a treating physician's opinion requires remand. *See, e.g., Goulbourne v. Saul*, No. 18-cv-2377 (KAM), 2020 WL 3960504, at *6 (E.D.N.Y. July 13, 2020) (remanding case where "ALJ failed to 'comprehensibly' provide reasons for the weight assigned" to the treating physician's opinion).

When the ALJ gave "little weight" to Dr. Youel's opinion that Plaintiff had a "well below sedentary" RFC, he reasoned that "physical treatment records do not support such limitations on physical examination" and further discounted Dr. Youel's opinion because he "treats at the VA; and their records have minimal physical findings." (Tr. 23.) Although the ALJ's rationale may speak to his interpretation of the evidence supporting Dr. Youel's opinion, the ALJ neglected to "comprehensively" provide reasons for not giving controlling weight to the treating physician's opinion. *See* 20 C.F.R. § 416.927(c)(2)-(6) (factors considered in determining what weight to give to a treating source's opinion); *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 267 (E.D.N.Y. 2010) (remanding case for ALJ's failure to apply treating physician rule because, *inter alia*, there was "no reference in the ALJ's decision to the various factors that must be considered in deciding what weight to give

27

the opinion of a treating physician"); *Rahman v. Astrue*, No. 09-cv-82 (RJD), 2009 WL 3614605, at *9 (E.D.N.Y. Nov. 2, 2009) (remanding case because the "ALJ's minimal explanation for disregarding [the treating physician's] medical opinion does not adequately examine relevant factors typically considered in applying the treating physician rule . . . ."). Accordingly, remand is appropriate here.

Here, the ALJ failed to consider the "the length, frequency, nature, and extent of the treating relationship" that Plaintiff had with Dr. Youel. *See* 20 C.F.R. § 416.927(c)(2)-(6). For instance, the ALJ appears to overlook Dr. Youel's long-term relationship as the Plaintiff's primary care provider at the VA, making no mention or analysis of the length or nature of their treatment relationship. (*See* Tr. 23); *see Stewart v. Comm'r of Soc. Sec. Admin.*, No. 19-cv-1287 (KAM), 2020 WL 4904583, at *6 (E.D.N.Y. Aug. 20, 2020) (remanding case after ALJ failed to consider the "length or nature" of the treating physician's relationship with plaintiff). Indeed, the ALJ's reasoning is especially concerning because the duration of care factored heavily into how the ALJ evaluated other medical opinions. For example, the ALJ gave Dr. Jacobson's and Dr. Aguiar's opinions little weight in part because both doctors only examined the plaintiff once. (Tr. 23-24.) Meanwhile, having treated the plaintiff since 2014, Dr. Youel likely

28

possesses the "longitudinal picture" of the plaintiff's
condition that may provide the type of "unique perspective to
the medical evidence that cannot be obtained from the objective
medical findings alone." *See* C.F.R. § 404.1527(c)(2); *see
Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986) (the opinion
of a treating physician is entitled to some extra weight because
"the treating physician is usually more familiar with a
claimant's medical condition than are other physicians[.]").

In contrast, the ALJ also credited "great weight" to
Dr. Ehrenpreis's and Dr. Ruddock's medical opinions, despite the
fact that Dr. Ehrenpreis's assessment was based on a "one-time
examination" and Dr. Ruddock was "not a treating or examining
source." (Tr. 24.) "In general, ALJs should not rely heavily
on the findings of consultative physicians after a single
examination. *Holloman v. Comm'r of Soc. Sec.*, No. 17-cv-4386
(MKB), 2018 WL 4861378, at *7 (E.D.N.Y. Sept. 28, 2018)
(internal quotation mark and citation omitted). This is because
"consultative exams are often brief, are generally performed
without the benefit or review of [the] claimant's medical
history and, at best, only give a glimpse of the claimant on a
single day." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990);
*see also Hernandez v. Astrue*, 814 F. Supp. 2d 168, 182–83
(E.D.N.Y. 2011) ("[T]he opinion of a consultative physician,
'who only examined a plaintiff once, should not be accorded the

same weight as the opinion of [a] plaintiff's treating psychotherapist.'" (quoting *Cruz*, 912 F.2d at 13)).  Thus, by according "great weight" to the consultative opinions of Dr. Ehrenpreis and Dr. Ruddock, which the ALJ acknowledged were based on "one-time examination[s]" or not from a "treating or examining source," (*see* Tr. 24), the ALJ failed to properly apply the treating physician rule.  *See Rosato v. Barnhart*, 352 F. Supp. 2d 386, 397 (E.D.N.Y. 2005) (holding that the ALJ misapplied the treating physician rule by according greater weight to a one-time consultative physician than a treating physician); *Nasca v. Colvin*, 216 F. Supp. 3d 291, 297 (W.D.N.Y. 2016) (finding that ALJ erred in giving great weight to consulting psychiatrist's opinion while giving only "limited weight" to plaintiff's treating psychiatric sources).

Moreover, the ALJ failed to consider whether Dr. Youel's medical opinion was consistent with other medical opinions in the record.  *See* 20 C.F.R. § 416.927(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion").  The record shows that Dr. Jacobson agreed that the Plaintiff was limited to minimal sedentary activity.  (*See* Tr. 22.)  Rather than address this consistency, the ALJ emphasized that "treatment records and examination findings most accurately reflect the claimant's functional abilities" and concluded that

30

the Plaintiff's records showed a "substantially greater ability
to function than as stated by either the consultative examiners
or the claimant's treating doctor."  (Tr. 24.)  Still, treating
physician assessments are "entitled to some extra weight, even
if contradicted by substantial evidence, because the treating
source is inherently more familiar with a claimant's medical
condition than are other sources."  *Schisler v. Sullivan*, 3 F.3d
563, 570 (2d Cir. 1993).  To this end, although the ALJ's
skepticism regarding the extent to which Plaintiff's treatment
records align with Dr. Youel's medical opinion is part of the
weighing analysis, it is not the only factor to consider when
assessing the weight of a treating physician's medical opinion.

　　　　Finally, the Court is also troubled by the ALJ's
cursory dismissal of Dr. Youel's opinion due to the fact that
Dr. Youel "treats at the VA."  (Tr. 23.)  The ALJ determined
that VA "records have minimal physical findings," and therefore
impliedly found that certain VA records should not be afforded
deference.  (*Id.*)  The Court is unaware of any legal principle
holding that VA records as to physical findings can, as a whole,
be discredited simply because they were recorded by VA
physicians.  Accordingly, the ALJ's purported "good reason[]"
for discounting Dr. Youel's opinion was inadequate and
constituted legal error.  *See Schaal v. Apfel*, 134 F.3d 496, 505
(2d Cir. 1998) ("[T]he Commissioner's failure to provide 'good

31

reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.").

For these foregoing reasons, the Court concludes that the ALJ erred in properly applying the treating physician rule and remands this case for further proceedings.  On remand, the ALJ is directed to consider the factors outlined above and in C.F.R. § 404.1527(c) in weighing Dr. Youel's medical opinion. If the ALJ nonetheless determines that Dr. Youel's opinion is not entitled to controlling weight, the ALJ must "comprehensively" state the bases for the alternative weight assigned.  In so remanding, the Court does not hold that Plaintiff is disabled or that he is entitled to social security benefits; rather, Plaintiff's case must be remanded to allow the agency to more thoroughly develop the record, if necessary, and to accord proper weight to the various medical opinions in the record.

## Conclusion

For the reasons set forth above, the Plaintiff's motion for judgment on the pleadings is GRANTED and the defendant's cross-motion for judgment on the pleadings is DENIED.  The case is remanded for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to close this case and enter judgment in favor of Plaintiff.

**SO ORDERED.**

DATED:     Brooklyn, New York
           March 9, 2021

                              _____/s/_____
                              HON. KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York